SCHIFF HARDIN, LLP
Duane H. Mathiowetz, SBN 111831
One Market
Spear Street Tower, Suite 3200
San Francisco, CA 94105
Telephone: (415) 901-8700
Facsimile: (415) 901-8701
dmathiowetz@schiffhardin.com

LINDQUIST & VENNUM LLP
David A. Allgeyer (MN #12042x)
Christopher R. Smith (MN #0340157)
4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 371-3211
Facsimile: (612) 371-3207
dallgeyer@lindquist.com
csmith@lindquist.com

ATTORNEYS FOR DEFENDANT
TT TECHNOLOGIES, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO)**

TRIC TOOLS, INC.,

Plaintiff,

v.

TT TECHNOLOGIES, INC., et al.,

Defendants.

The Honorable Jon. S. Tigar

**DEFENDANT TT TECHNOLOGIES, INC.'S MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT**

**Hearing Date:** September 4, 2014
**Time:** 2 p.m.
**Courtroom:** Courtroom 9, 19th Floor

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .... iii

NOTICE OF MOTION AND MOTION .... 1

MEMORANDUM AND POINTS OF AUTHORITIES .... 1

I. FACTUAL AND PROCEDURAL BACKGROUND. .... 2
- A. Background of the Claimed Technology. .... 2
- B. TRIC's Remaining Patent Claims. .... 2
- C. The Court's Claim Constructions. .... 3
- D. TT's Accused Grundotugger Device. .... 4
  - 1. TT's Rocker Arm Assembly. .... 4
  - 2. TT's Roller Mechanism. .... 5
  - 3. TT's Frame Cross Bar. .... 6
  - 4. TT's Reaction Plate. .... 6

II. LEGAL STANDARD. .... 7

III. ARGUMENT. .... 8
- A. None of TRIC's Remaining Claims Are Infringed Because TT Does Not Use a Post Tensioning Device. .... 8
  - 1. TT Does Not Use the Post Tensioning Device Required by Claims 19 and 20 of the '880 Patent and Claim 23 of the '031 Patent. .... 8
  - 2. TT Does Not Use the Post Tensioning Device Also Required by Claim 7. .... 10
    - a. TRIC's Disclosed "Invention" Requires a Post Tensioning Device. .... 10
    - b. TRIC's Claimed "Cable Pulling System" Includes a Post Tensioning Device. .... 12
    - c. TRIC's "Cable Engaging Device" of its '442 Patent is the Same as the "Cable Pulling Device" of its '031 Patent. .... 13
- B. None of TRIC's Remaining Claims Are Infringed Also Because TT's Device is Not Configured for Loading Cable Using "Sideways Mounting," "Sideways Insertion," or the "Step of Placing Said Frame Upon a Side Surface of Said Cable." .... 14
- C. Claims 19 and 20 of the '880 Patent and Claim 7 of the '442 Patent Are Not Infringed Also Because TT's Device Does Not Include a "Pulley." .... 17
- D. Claims 19 and 20 of the '880 Patent and Claim 7 of the '442 Patent Are Not Infringed Also Because TT's Device is Not Configured for a Cable to

Be Sideways Mounted or Inserted "Around" or "Onto" a Pulley. ........................20

E. Claim 7 of the '442 Patent is Not Infringed Also Because TT's Device Does Not Have Reaction Plate that is "Releasably Engagable." ..........................21

IV. CONCLUSION ........................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Goldenberg v. Cytogen, Inc.*,
373 F.3d 1158 (Fed. Cir. 2004) .......... 8

*Honeywell Intern., Inc. v. ITT Indus., Inc.*,
452 F.3d 1312 (Fed. Cir. 2006) .......... 10

*Intellectual Science and Technology, Inc. v. Sony Electronics, Inc.*,
589 F.3d 1179 (Fed. Cir. 2009) .......... 8

*Lucent Technologies, Inc. v. Gateway, Inc.*,
525 F.3d 1200 (Fed. Cir. 2008) .......... 13

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
134 S.Ct. 2120 (2014) .......... 14

*Netcraft Corp. v. eBay, Inc.*,
549 F.3d 1394 (Fed. Cir. 2008) .......... 10, 12

*Netword, LLC v. Centraal Corp.*,
242 F.3d 1347 (Fed. Cir. 2001) .......... 8

*Playtex Products, Inc. v. Procter & Gamble Co.*,
400 F.3d 901 (Fed. Cir. 2005) .......... 7, 8

*Regents of Univ. of Minn. v. AGA Med. Corp.*,
717 F.3d 929 (Fed. Cir. 2013) .......... 10, 12

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
242 F.3d 1337 (Fed. Cir. 2001) .......... 10

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
503 F.3d 1295 (Fed. Cir. 2007) .......... 10, 12

**STATUTES**

35 U.S.C. § 112 ¶ 2 .......... 14

## NOTICE OF MOTION AND MOTION

TO: Plaintiff TRIC Tools, Inc., and its counsel, Weisberg & Miller, 654 Sacramento Street, Third Floor, San Francisco, CA 94111.

PLEASE TAKE NOTICE that on September 4, 2014 at 2:00 p.m., or as soon thereafter as counsel may be heard before the Honorable Jon. S. Tigar, in the United States Courthouse for the Northern District of California, San Francisco Courthouse, Courtroom 9, 19th Floor, 450 Golden Gate Avenue, San Francisco, California, Defendant TT Technologies, Inc. ("TT") will and hereby moves the Court for summary judgment of no infringement on all of TRIC's remaining claims of patent infringement. This motion is made on the grounds that TT does not infringe any of the four remaining patent claims asserted by TRIC Tools, Inc. ("TRIC") in this action. This motion is based upon the Notice of Motion and Motion, Memorandum and Points of Authorities, the supporting declarations and exhibits, the Court's June 24, 2014 Claim Construction Order, the pleadings and records on file in this action, and such other evidence and argument as may be presented to the Court at the hearing.

## MEMORANDUM AND POINTS OF AUTHORITIES

Defendant TT Technologies, Inc. brings this motion for summary judgment in its favor on all remaining claims of patent infringement asserted by Plaintiff TRIC Tools Inc. in this action. Based upon the Court's recent Claim Construction Order, no reasonable jury could find that TT's Grundotugger machine practices the limitations of TRIC's four remaining patent claims because no triable issue of fact exists on the following:

- **TT's machine does not use a post tensioning device** as required by all of TRIC's remaining claims.
- **TT's machine is not configured for sideways mounting or insertion of the cable** as required by all of TRIC's remaining claims.

- **<u>TT's machine does not use a pulley</u>** as required by TRIC's asserted Claims 19 and 20 of U.S. Patent No. 6,305,880 and Claim 7 of U.S. Patent No. 6,793,442.
- **<u>TT's machine is not configured for a cable to be sideways mounted or inserted "around" or "onto" a pulley</u>** as required by TRIC's asserted Claims 19 and 20 of U.S. Patent No. 6,305,880 and Claim 7 of U.S. Patent No. 6,793,442.
- **<u>TT's machine does not have a reaction plate that is "releasably engagable"</u>** as required by Claim 7 of U.S. Patent No. 6,793,442.

For these reasons, TT's motion for summary judgment in its favor on all of TRIC's remaining patent claims should be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

### A. Background of the Claimed Technology.

TT Technologies, Inc. is the national leader in the pipe bursting equipment industry. Since 1980, thousands of miles of pipe have been successfully replaced using TT's pipe bursting equipment. (Declaration of Christian J. Brahler ¶ 2.) Pipe bursting consists of the replacement of old utility and other underground pipes by pulling a mole through and breaking up the old existing pipe while it is still in the ground and simultaneously pulling through new replacement pipe to take its place. (*Id.* ¶ 3.) This trenchless method requires digging only small entry and exit pits at either end of the old pipe and avoids having to dig long trenches that would otherwise disrupt streets, traffic, and adjacent properties. (*Id.*) The method has long been used successfully to replace pipe ranging from the sewer lines running under Santa Monica Boulevard in Los Angeles to small lateral lines in residential areas. (*Id.* ¶ 4.)

### B. TRIC's Remaining Patent Claims.

As a result of patent reexamination petitions filed by TT with the United States Patent and Trademark Office regarding the invalidity of the claims asserted in this action, and by

stipulation between the parties, TRIC has only four asserted patent claims remaining in this action: Claim 23 of U.S. Patent No. 6,524,031 ("the '031 patent") (which depends upon Claims 22 and 20); Claim 19 (which depends upon Claim 18), and Claim 20 (which depends upon Claims 19 and 18), of U.S. Patent No. 6,305,880 ("the '880 patent"); and Claim 7 of U.S. Patent No. 6,793,442 ("the '442 patent") (which depends upon Claim 1). (*See* Dkt. No. 73 at 2.) All of these claims and patents are in the same patent family and share the same patent specification.[1]

### C. The Court's Claim Constructions.

On June 24, 2014, the Court issued a Claim Construction Order in this action construing a number of claim terms relevant to this motion as follows:

| **CLAIM** | **TERM** | **CONSTRUCTION** |
|---|---|---|
| **'880 PATENT** | | |
| 19, 20 | "cable engagement path in relation to said frame, such that said cable can be sideways mounted within said cable pulling frame and around said pulley and into said cable pulling device" | "both the frame and the pulling device are configured so that the cable can be positioned within the apparatus without the need to 'thread' the cable through the apparatus like the eye of a needle" |
| **'031 PATENT** | | |
| 23 | "cable pulling device" | "a post tensioning device for engaging and pulling a cable with a series of cyclic strokes." |
| **'442 PATENT** | | |
| 7 | "pulley" | "a wheel which contacts a cable to guide the direction of the cable axis" |
| 7 | "frame members being configured such that said cable pulling system is adaptable for the sideways | "frame members being configured for the sideways insertion of a cable into said cable insertion slot and onto said pulley without threading the end of the |

[1] For the convenience of the Court, the combined text of these remaining claims has been provided as Exhibit A to the Declaration of Christopher R. Smith, filed in support of this motion.

| CLAIM | TERM | CONSTRUCTION |
|---|---|---|
| | insertion of said cable into said cable insertion slot and onto said pulley” | cable through the cable pulling device” |
| 7 | “releasably engagable” | “engagable without fixation (e.g., bolting or welding) and removable without the use of tools” |

(June 24, 2014 Claim Construction Order (Dkt. No. 97) (“Claim Construction Order”) at 26-27.)

**D. TT’s Accused Grundotugger Device.**

TRIC’s patent claims in this action are solely directed to TT’s trenchless underground lateral pipebursting machine called the “Grundotugger,” which generally operates in the following manner:




(Brahler Decl. ¶ 5.) Several key design aspects of the TT’s accused Grundotugger machine are relevant to this action.

***1. TT’s Rocker Arm Assembly.***

One key aspect of TT’s Grundotugger design relevant to TRIC’s claims is its innovative rocker assembly for grabbing and pulling cable that employs dissimilarly sized hydraulic cylinders that operate at different angles to one another:




(*Id.* ¶ 6.) TT developed the innovative rocker arm design in part because the bottom "elbow" of the rocker arm acts as a critical friction point to aid the gripping jaw in gripping the cable firmly during the pulling stroke and helps alleviate the problem of cable slippage. (*Id.* ¶ 7.)[2]

***2. TT's Roller Mechanism.***

TT's Grundotugger machine also includes a roller mechanism located on the bottom of the frame near where the pipe exits the ground:




(Brahler Decl. ¶ 8.) When the cable is threaded through the machine and into the gripping jaws, the cable extends horizontally above the roller, with the roller positioned between the cable and

[2] *See also* TT Technologies, Inc.'s Claim Construction Tutorial Slides provided to the Court on March 12, 2014, showing videos of TT's rocker arm assembly in action, and TT Technologies YouTube video of the Grundotugger in action at www.youtube.com/watch?v=orI4xY4a394.

the ground. (*Id.* ¶ 9.) The roller mechanism keeps the cable from getting mired in the dirt and mud that can sometimes form at the bottom of the exit pit. (*Id.*) The roller reduces potential friction on the cable from dirt and mud as the cable passes horizontally across the bottom of the pit and to the rocker arm. (*Id.*) The roller mechanism is not designed to have any effect on the axis of the cable. (*Id.*)

***3. TT's Frame Cross Bar.***

TT's Grundotugger machine also uses a cross bar on the bottom based plate portion of the frame under the rocker arm assembly:




(Brahler Decl. ¶ 10 and 11.) The frame's cross bar serves to stabilize the frame structure nearest the point of the greatest pulling force. (*Id.* ¶ 11.) The base plate of the Grundotugger frame that includes the cross bar is bolted to the remaining frame components with two carriage bolts, one on each side of the frame. (*Id.*) The cable must be threaded over the roller and the cross bar in order for it to be mounted into the rocker arm and jaws for the machine to operate. (*Id.* ¶ 12.)

***4. TT's Reaction Plate.***

TT's Grundotugger machine also has a reaction plate affixed to the frame. (*Id.* ¶ 13.)

The reaction plate is the portion of the frame that butts up against the inside wall of the exit pit and spreads the pulling force against the compacted soil. (*Id.*) The reaction plate is fixed to the frame using a series four of threaded cam bolts that lock the reaction plate into place:






(Brahler Decl. ¶ 13 and 14.) When the reaction plate is locked into place with the bolted cams, the reaction plate remain secured to the frame even when the Grundotugger machine is lifted up and out of the pit. (*Id.* ¶ 14.)

## II. LEGAL STANDARD.

"A determination of patent infringement consists of two steps: (1) the court must first interpret the claim, and (2) it must then compare the properly construed claims to the allegedly infringing device." *Playtex Products, Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 905–06 (Fed. Cir. 2005) (citation omitted). "To prove infringement, the patentee must show that the accused device meets each claim limitation, either literally or under the doctrine of equivalents." *Playtex*

*Products, Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 906 (Fed. Cir. 2005) (citation omitted).

"To support a summary judgment of non-infringement it must be shown that, on the correct claim construction, no reasonable jury could have found infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee." *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001). To survive such a motion, a patentee must set forth competent evidence that "features of the accused product would support a finding of infringement under the claim construction adopted by the court, with all reasonable inferences drawn in favor of the non-movant." *Intellectual Science and Technology, Inc. v. Sony Electronics, Inc.*, 589 F.3d 1179, 1183 (Fed. Cir. 2009) (citations omitted). "Summary judgment of non-infringement under the doctrine of equivalents is appropriate if no reasonable jury could determine two elements to be equivalent." *Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158, 1164 (Fed. Cir. 2004).

## III. ARGUMENT.

### A. None of TRIC's Remaining Claims Are Infringed Because TT Does Not Use a Post Tensioning Device.

#### *1. TT Does Not Use the Post Tensioning Device Required by Claims 19 and 20 of the '880 Patent and Claim 23 of the '031 Patent.*

Three of TRIC's four remaining asserted patent claims, Claims 19 and 20 of the '880 patent, and Claim 23 of the '031 patent, all expressly include the limitation of a "cable pulling device." Claim 23 of the '031 patent includes the limitation directly, and Claims 19 and 20 of the '880 patent include the limitation from referenced Claim 18. In its June 24, 2014 Claim Construction Order, the Court determined that TRIC expressly limited the scope of the "cable pulling device" of its invention to be "a post tensioning device for engaging and pulling a cable with a series of cyclic strokes." (Claim Construction Order at 13-16.) As TRIC's shared patent specification of its asserted patents explains, post tensioning devices are pre-existing inventions

that "have been used for a number of years . . . for post tensioning steel cable or rod, such as rebar, in concrete structures, and for tensioning bridge cable, in the bridge building industry." ('880 Patent, 7:60-66.) TRIC in fact disclosed in the specification "a side elevational view of *the cable pulling device of the present invention*" at Figure 9:




FIG.9

(*Id*. 2:47-48 (emphasis added); Fig. 9.) Based upon these statements, the Court found that TRIC's specification "expressly limits the scope of the term 'cable pulling device' to post tensioning devices." (Claim Construction Order at 16.)

Given this construction, TT Technologies, Inc.'s Grundotugger design cannot infringe Claim 23 of the '031 patent or Claims 19 and 20 of the '880 patent because the Grundotugger does not use a post tensioning device to pull cable. (Brahler Decl. ¶ 6.) At no point has TRIC ever asserted that TT's machine uses a post tensioning device. Instead, it is undisputed that the Grundotugger uses an innovative rocker arm assembly that employs dissimilarly sized hydraulic cylinders that operate at different angles to one another to pull cable. (*Id.*) Moreover, it is undisputed that the cable pulling component of TT's device did not pre-exist TRIC's claimed invention and has never been used for post tensioning steel cable or rod in concrete structures or for tensioning bridge cable in the bridge building industry. (*Id.*) In fact, TT has been granted a patent on its Grundotugger design, employing the rocker arm, and the patent was granted over TRIC's patents that disclose a post tensioning device. (*Id.* ¶ 6, Ex. A) Given the Court's construction of this key limitation, TRIC's assertions of patent infringement based upon these

claims fail because the accused device does not contain a required limitation of TRIC's asserted claims.

### *2. TT Does Not Use the Post Tensioning Device Also Required by Claim 7.*

Although Claim 7 of the '442 patent does not expressly state the limitation of a "cable pulling device" like the asserted claims discussed above, Claim 7 also requires this limitation. Claim 7 requires a "post tensioning device" first because the Court has determined that TRIC's statements in the specification limit TRIC's disclosed invention as a whole to one that uses a post tensioning device to pull cable. These statements therefore also limit Claim 7. Second, Claim 7 requires the use of post tensioning device also because TRIC disclosed its "cable pulling system" to include this limitation. Third, Claim 7 requires a post tensioning device also because its "cable engaging device" of Claim 7 is disclosed to be the same component as a "cable pulling device." If not, TRIC failed to define the term "cable engaging device" in its specification, and the term is indefinite pursuant to 35 U.S.C. § 112, rendering Claim 7 invalid.

#### a. TRIC's Disclosed "Invention" Requires a Post Tensioning Device.

The Court's determinations regarding TRIC's statements that its invention requires a post tensioning ram apply to all the claims in its patent directed to pulling cable. As the Federal Circuit has held, when a patent "describes the features of the 'present invention' as a whole, this description limits the scope of the invention." *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007); *see also Regents of Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 936 (Fed. Cir. 2013); *Netcraft Corp. v. eBay, Inc.*, 549 F.3d 1394, 1398 (Fed. Cir. 2008) (stating "we agree with the district court that the common specification's repeated use of the phrase 'the present invention' describes the invention as a whole"); *Honeywell Intern., Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318–1320 (Fed. Cir. 2006); *SciMed Life Sys., Inc. v.*

*Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343 (Fed. Cir. 2001).

In its Claim Construction Order, the Court found that TRIC expressly limited its invention to the use of a prior art post tensioning ram to pull cable based upon its clear statements in the shared specification. TRIC stated that the "cable puller 120 may be any of several such pulling devices, as have been built by any of several companies, and have been used for a number of years as post tensioning devices for post tensioning steel cable or rod, such as rebar, in concrete structures, and for tensioning bridge cable, in the bridge building industry." ('442 patent, 7:60-66.) TRIC disclosed in the specification "a side elevational view of *the cable pulling device of the present invention*" as Figure 9. (*Id.*, 2:47-48 (emphasis added); Fig. 9.) TRIC stated that the cable puller of its invention was a post tensioning ram and pointed out this claimed novelty as a key aspect of its invention:

> Post Tensioning Rams (PTR), have never before been used to pull a length of cable, for pulling or lifting objects; this use has heretofore been assigned to winches, and/or block and tackle, and chain hoists. *In the present invention* the PTR is used for pulling the mole using varying lengths and size of cable from a few feet, to several thousand feet and the pulling force is not affected by cable length.

(*Id.*, 8:7–14 (emphasis added). TRIC then defined the "PTR in *the present invention*," stating "a significant advantage *of the present invention*" was "the use of the light weight bridge cable tensioning device as a cable pulling device." (*Id.*, 8:14–25 (emphasis added).) TRIC further stated that "[t]he preferred cable pulling device *of the present invention* is a hydraulic bridge cable tensioning device that operates in a cyclic cable pulling manner, having repeatable short strokes." (*Id.*, 11:45-48 (emphasis added).) TRIC ended its specification by stating the following:

> The significant advantages *of the present invention* are its relatively small, light weight components which allow a single operator to transport, install and operate the device for trenchless

> replacement of underground pipe. The larger pulling force generated by *the PTR cable pulling device* allows it to pull the mole through pipe of varying diameters and composed of virtually any pipe material, whether it be fracturable (such as cast iron or ceramic) or malleable (such as steel) . . . .

(*Id*. 16:34-43 (emphasis added).)

TRIC's repeated characterization in the specification of "the present invention"—both descriptively and when discussing the prior art—as using a post tensioning device to pull cable limits the scope of TRIC's invention to one that pulls cable with a post tensioning ram. (Claim Construction Order at 16.) *See Verizon Servs. Corp.*, 503 F.3d at 1308; *Regents of Univ. of Minn.*, 717 F.3d at 936; *Netcraft Corp.*, 549 F.3d at 1398. Claim 7 therefore also requires the use of a post tensioning ram in accordance with TRIC's explicit statements in its specification. For the same reasons TT's device cannot infringe Claims 19 and 20 of the '880 patent and Claim 23 of the '031 patent, no reasonable jury could find that TT infringes Claim 7 of the '442 patent because it is undisputed TT's device does not use a post tensioning ram to pull cable.

**b. TRIC's Claimed "Cable Pulling System" Includes a Post Tensioning Device.**

Claim 7 further requires a "cable pulling device" because TRIC expressly defined its "cable pulling system" of Claim 7 to include a "cable pulling device." Claim 7, by its reference to Claim 1, requires a "cable pulling system," "including" a cable engaging device, a reaction plate, a frame with a pulley and that is adaptable for sideways insertion of the cable onto the pulley. ('442 patent, Claim 7.) The term "including" has consistently been interpreted to be non-restrictive, meaning "the listed elements . . . are essential but other elements may be added." *Lucent Technologies, Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1214 (Fed. Cir. 2008). In the specification, TRIC further defined a "cable pulling system" of its invention as follows:

> A light weight *cable pulling system, generally designated 80*, is disposed within the second hole 32 proximate the second end 36 of

> the pipe 14. The preferred cable pulling system 80 includes a cable pulling frame member 84 having leg members 88 and a rotatable cable pulley 92 mounted thereto. A frame bracing reaction plate 96 is positioned against the side wall 100 of the hole 32 to provide a strong, firm surface for reactive cable pulling forces, as described herebelow. The reaction plate 96 is formed with a cable passage slot 104 (not shown in FIG. 1) for passage of the cable 70 therethrough. The cable 70 therefore passes through the plate slot 104 and around the cable pulley 92 *to a cable pulling device 120* that is next described.
>
> The *cable pulling device 120* is removably mounted to a generally cylindrical, slotted mounting socket or annulus 124 that is fixedly engaged to the frame 84. The *cable pulling device* 20 is preferably a hydraulic device which is operated utilizing a portable hydraulic pump 128 having hydraulic lines 132 leading therefrom to the cable pulling device 120. The *cable pulling device* 120 includes a cable pulling collet which releasably engages the cable for repeatable short pulling strokes. End portions of the cable 70 may be disposed in a coil 140 upon the ground surface 20.

(‘442 patent, 4:1-24 (emphasis added).) Therefore, TRIC’s “cable pulling system” of Claim 7 includes a “cable pulling device,” which has been construed to be “a post tensioning device.” (Claim Construction Order at 16.) For this additional reason, Claim 7 requires a post tensioning device, which TT’s machine does not use.

**c. TRIC’s “Cable Engaging Device” of its ‘442 Patent is the Same as the “Cable Pulling Device” of its ‘031 Patent.**

Finally, Claim 7 requires a post tensioning device also because its limitation “cable engaging device” of Claim 7 of its ‘442 patent is the same element as the “cable pulling device” of the ‘031 patent. The three asserted patents share the same specification. The term “cable engaging device” does not appear anywhere in that shared specification. The language of Claim 7 itself, however, states that a “cable engaging device” includes “a first cable gripping device for *engaging said cable in a cable pulling stroke*, and a second cable engaging device for gripping *engaging said cable following said cable pulling stroke*.” (‘442 patent, 17:1-4 (emphasis added).) In the context of Claim 7, the “cable engaging device” is therefore the component that

engages and pulls the cable. This Court has construed TRIC's "cable pulling device" to be "a post tensioning device *for engaging and pulling a cable with a series of cyclic strokes*." (Claim Construction Order at 16) (emphasis added.) A "cable engaging device" is no more than a synonym for a "cable pulling device," which requires the use of a post tensioning device.[3] For this additional reason, TT cannot infringe Claim 7.

Therefore, none of TRIC's remaining patent claims are infringed by TT's device because TT's device does not include the required post tensioning device, and summary judgment should be entered in favor of TT on TRIC's remaining claims in their entirety.

### B. None of TRIC's Remaining Claims Are Infringed Also Because TT's Device is Not Configured for Loading Cable Using "Sideways Mounting," "Sideways Insertion," or the "Step of Placing Said Frame Upon a Side Surface of Said Cable."

In addition, none of TRIC's remaining patent claims are infringed because TT's device is not configured for "sideways mounting," "sideways insertion," of a cable or for the "step of placing said frame upon a side surface of said cable."

Claim 7 of the '442 patent requires that the "frame members being configured such that said cable pulling system is adaptable for the *sideways insertion of said cable* into said cable insertion slot and onto said pulley." The Court construed this limitation to mean "frame

[3] Should TRIC contend that the "cable engaging device" is not a synonym for "cable pulling device," then the patent fails to define or describe the term "cable engaging device," rendering Claim 7 invalid as indefinite. *See* 35 U.S.C. § 112 ¶ 2; see *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S.Ct. 2120, 2129 (2014)( "[W]e read § 112, ¶ 2 to require that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty.") If a "cable engaging device" was intended to be distinct from the cable pulling device, TRIC provided no description of that distinction within the specification, nor did TRIC disclose any separate "cable engaging device" structure. We know from the claim language that, like the cable pulling device, the cable engaging device has gripping devices that grip the cable during and following the pulling stroke. If this claim term does not refer to TRIC's disclosed cable pulling device, then the patent fails to inform with reasonable certainty one skilled in the art about the scope of the invention of Claim 7, and the claim is invalid as indefinite.

members being configured for the sideways insertion of a cable into said cable insertion slot and onto said pulley *without threading* the end of the cable through the cable pulling device." (Claim Construction Order at 23 (emphasis added).) Similarly, Claim 19 of the '880 patent and, by its reference to Claim 19, Claim 20 of the '880 patent both require a "cable engagement path in relation to said frame, such that said *cable can be sideways mounted* within said cable pulling frame and around said pulley and into said cable pulling device." The Court construed this limitation to mean "both the frame and the pulling device are configured so that the cable can be positioned within the apparatus *without the need to 'thread' the cable through the apparatus like the eye of a needle*." (*Id.* at 12 (emphasis added).) Claim 23 of the '031 patent, a method claim, also requires the "step of placing said frame *upon a side surface of said cable*" for the purpose of "engaging the cable pulling means to said cable." TRIC's patents universally disclose a cable pulling frame with a fully open design as follows:



FIG.6



FIG.7

('442 and '880 patents, Figs. 6 and 7 (arrows showing open areas); *see also Id.*, Figs 13-15 and 30-32.)

Not only does TT's Grundotugger not include a post tensioning "cable pulling device," as discussed above, TT's machine also does not have a frame configured for "sideways insertion" or that can be "sideways mounted" in the manner that these limitations were construed by the

Court. Instead, as described above, TT's Grundotugger is configured with a cross bar and a roller mechanism both positioned on the base of the frame that blocks the "sideways insertion" of sideways mounting" of the cable into the frame:







(Brahler Dec. at 8-11.) The cable, therefore, must be threaded through TT's Grundotugger frame in order for the cable to be mounted into the machine, directly opposite from the required limitation of TRIC's patent claims. (*Id.* ¶ 12; Claim Construction Order at 27.) For these additional reasons, TT's device does not infringe any of TRIC's remaining asserted patent claims, and TT's motion for summary judgment as to those claims should be granted.

**C. Claims 19 and 20 of the '880 Patent and Claim 7 of the '442 Patent Are Not Infringed Also Because TT's Device Does Not Include a "Pulley."**

Although the Court need not reach this issue in order to grant summary judgment in favor of TT on TRIC's remaining infringement claims, TRIC's asserted Claims 19 and 20 of the '880 patent, and Claim 7 of the '442 patent, also require a "pulley" in order to be infringed. TT's device does not use a pulley, and for this additional reason TT's motion should be granted.

The Court construed the term "pulley" in the context of TRIC's patents —relying on the specification, the definition of pulley, and the testimony of Dr. Dornfeld—to mean "a wheel which contacts a cable to guide the direction of the cable axis." (Claim Construction Order at 20.) The specification describes a "rotatable cable pulley 92" and explains that the "cable . . . passes through the plate slot 104 and around the cable pulley 92 to a cable pulling device 120," as depicted here:



FIG.1



FIG.6

('442 patent, 4:5-13, Figs. 1 and 6.)

TRIC identified in its infringement contentions two components of TT's device that TRIC claims are purportedly a "pulley." TRIC has primarily asserted that the rocker arm assembly of the TT device, described above, is somehow a "pulley." The Court rejected this notion, however, when it construed the "pulley" to be a "wheel." (Claim Construction Order at 20.) The rocker arm assembly is not a wheel as can be readily understood from the rocker arm assembly schematic in the Grundotugger Parts Manual:




(Brahler Decl., ¶ 6.) Therefore, no reasonable jury could find that TT's rocker arm is a "pulley" as claimed by TRIC.

Second, although TRIC did not argue this point during claim construction, TRIC also initially identified the roller in TT's device to be a "pulley." TT's roller component rests at the bottom of TT's frame near the old pipe in the exit pit and facilitates the smooth horizontal movement of the cable as it travels through the dirt, water, and mud often found in the pit. (Brahler Decl. ¶ 9.) TT's roller also is not a "wheel" and does not "guide the direction of the cable axis" in the manner TRIC discloses in its invention.

In particular, TRIC uniformly and repeatedly describes its pulley's operation to require the cable passing "*around* the pulley":

- "The cable 70 *passes* . . . *around the cable pulley* 92 to a cable pulling device . . . ." ('442 patent, 4:11-12) (emphasis added).
- ". . . an operator . . . will *pass* the cable through the plate slot 104, *around the pulley* 92 into the slotted annulus 124 and into operative engagement within the

cable puller 120 that is mounted in the socket 124 . . . .” (*Id.* 4:24-27) (emphasis added).

- “ . . . the mole-attached cable 70 can be *wrapped around the pulley* 92 . . .” (*Id.* 7:12) (emphasis added).
- “ . . . the cable 70 may be . . . *wrapped around the pulley* . . .” (*Id.* 10:9-11) (emphasis added).
- “ . . . the cable 70 is mounted sideways into the cable insertion slots and *wrapped around the pulley* . . .” (*Id.* 10:47-50) (emphasis added).

TRIC’s “pulley,” therefore, is uniformly disclosed and defined to be a component “around” which the cable can be “wrapped” to guide the cable from a horizontal to a vertical position. (*See id.*, 4:24-27.) Without this guidance, the cable that emerges from the horizontal underground pipe could not reorient to a vertical position so it can be mounted inside the cable pulling device attached to the top of the frame and be pulled. (*See* ‘442 patent, Fig. 1.) In TT’s device, the roller does not affect the axis of the cable. (Brahler Decl. ¶ 9.) Rather, it provides reduced friction for a cable moving horizontally through a dirty and muddy pit. (*Id.*) TT’s Grundotugger in fact would not operate and would malfunction if the cable was wrapped around its roller. (*Id.*)

Moreover, Claim 7 of the ‘442 patent, by reference to Claim 1, requires a “cable insertion slot” in the reaction plate and requires the cable pulling system to be “adaptable for the sideways insertion of said cable into said cable pulling insertion slot and *onto said pulley*.” The roller of TT’s device blocks the sideways insertion of the cable into the device. (Brahler Decl. ¶ 9.) If TT’s device were to be placed sideways onto a cable, the cable would be *under* the roller and pinned against the ground, or would cause the cable to dislodge the roller from the frame

entirely, rather than practicing the limitation of "sideways insertion of said cable . . . *onto said pulley*." (*Id.*) Given this, no reasonable jury could find that TT's roller is a "pulley" as claimed by TRIC.

As such, based upon the Court's construction and TRIC's disclosures in the spcification, the requirement of a "pulley" also bars TRIC's claims of infringement of Claims 19 and 20 of the '880 patent and Claim 7 of the '442 patent. For this further reason, TT's motion should be granted as to those claims.

**D. Claims 19 and 20 of the '880 Patent and Claim 7 of the '442 Patent Are Not Infringed Also Because TT's Device is Not Configured for a Cable to Be Sideways Mounted or Inserted "Around" or "Onto" a Pulley.**

Even if TRIC were to argue that the roller component of TT's machine is a "pulley" as construed by the Court—which it is not—Claims 19 and 20 of the '880 patent and Claim 7 of the '442 patent still cannot be infringed because TT's device is not configured for the sideways mounting or insertion of a cable either "around" or "onto" a pulley and then into the device as TRIC's claims require.

Claims 19 and 20 of the '880 patent include the limitation requiring that "frame members are disposed to provide a cable engagement path in relation to said frame, such that said cable can be sideways mounted within said cable pulling frame and *around said pulley and into said cable pulling device*." Claim 7 of the '442 patent includes the limitation of "frame members being configured such that said cable pulling system is adaptable for the sideways insertion of said cable into said cable insertion slot and *onto said pulley*." Neither of these limitations can be practiced by TT's machine.

Even if TRIC were to assert that the roller component of TT's device is somehow a "pulley," the device is not configured or disposed to allow a cable to be sideways inserted or mounted "around" or "onto" the roller. As shown above, TT's device is configured for the cable

to move horizontally above TT's roller. (Brahler Decl. ¶ 9.) If one were to attempt with TT's Grundotugger to sideways insert a cable "onto said pulley," as TRIC's Claim 7 requires, the roller would be positioned on top of the cable and would either be block the cable's insertion into the frame of would cause the cable to dislodge the roller from the frame entirely. (*Id.*) Similarly, sideways mounting a cable "around said pulley" with TT's Grundotugger device, as TRIC's Claims 19 and 20 require, would not be possible using TT's roller. (*Id.*) Not only would the roller wedge against the cable or the cable knock the roller from the frame, any attempt to mount a cable "around" the roller would render TT's device inoperative—binding up the cable and preventing the cable puller from operating. (*Id.*)

For this additional reason, even if TRIC were to argue that TT's roller component is somehow a "pulley," Claims 19 and 20 of the '880 patent and Claim 7 of the '442 patent would still not be infringed because TT's device does not allow for the sideways mounting or insertion of a cable "around" or "onto" the roller. As such, TT's motion for summary judgment should be granted as to these claims.

**E. Claim 7 of the '442 Patent is Not Infringed Also Because TT's Device Does Not Have Reaction Plate that is "Releasably Engagable."**

Although the Court need not reach this issue either in order to grant summary judgment in favor of TT on all of TRIC's remaining claims, TT's Grundotugger also does not infringe Claim 7 of the '442 patent because the device does not have a reaction plate that is "releasably engagable."

Claim 7 requires a "reaction plate that is a generally flat member that is releasably engagable with said frame members." In its recent Claim Construction Order, the Court construed "releasably engagable" to mean "engagable without fixation (e.g., bolting or welding) and removable without the use of tools." (Claim Construction Order at 24.) TRIC's

specification discloses that a "plurality of reaction plate alignment pins 406 project from the base member 400 for the aligned engagement of the frame 84 with the reaction plate 96." ('442 patent, 6:29-31.) TRIC further discloses that a "plurality of frame engagement holes 439 are formed in the plate 96 to matingly engage the base plate alignment pins 406 of the cable pulling frame 84." (*Id.*, 6:65-7:1.) In other words, TRIC's reaction plate has holes that slide over pins protruding from the frame, and the reaction plate simply rests in place over those pins by gravity as the machine operates. If the frame were to be lifted up from the opposite end, TRIC's reaction plate would slide off TRIC's frame. Therefore, TRIC's reaction plate being "releasably engaged" to its frame means it may be mounted by sliding it over pins and by sliding it back off the pins with no fixation. In its specification, TRIC distinguishes components that are "fixedly engaged, such as by welding or threaded bolts." (*Id.*, 10:33.)

By contrast, TT's reaction plate is fixedly engaged to the frame components of TT's machine using bolted cam fixtures:




(Brahler Decl. ¶ 13-14.) Whereas TRIC's disclosed "releasably engagable" reaction plate may be removed simply by sliding or lifting the plate off the frame, TT's reaction plate may only be removed if the four bolted cams are loosened and disengaged. (*Id.* ¶ 13.) TT's device uses these cams, which are attached to the frame with threaded bolts, to affix the reaction plate to the frame

and keep it stable during the pulling process. (Id. ¶ 13-14.) When the reaction plate is locked onto the frame, the reaction plate remains securely in place as the Grundotugger machine is lifted up and out of the exit pit. (*Id.* ¶ 14.) TT's device therefore does not practice the limitation of a reaction plate being "releasably engagable with said frame members" as construed by the Court. For this additional reason, TT's motion should be granted as to Claim 7.

## IV. CONCLUSION

In summary, no reasonable jury could conclude that TT's accused device infringes any of TRIC's remaining asserted patent claims based upon the following:

- **TT's machine does not use a post tensioning device** as required by all of TRIC's remaining claims.
- **TT's machine is not configured for sideways mounting or insertion of the cable** as further required by all of TRIC's remaining claims.
- **TT's machine does not use a pulley** as required by TRIC's asserted Claims 19 and 20 of the '880 patent and Claim 7 of the '442 patent.
- **TT's machine is not configured for the cable to be sideways mounted or inserted "around" or "onto" a pulley** as further required by TRIC's asserted Claims 19 and 20 of the '880 patent and Claim 7 of the '442 patent.
- **TT's machine does not have a reaction plate that is "releasably engagable"** as required by TRIC's asserted Claim 7 of the '442 patent.

Therefore, TT's Motion for Summary Judgment of No Infringement on TRIC's remaining claims of patent infringement should be granted.

DATE: July 31, 2014.

**LINDQUIST & VENNUM LLP**

s/ Christopher R. Smith

Christopher R. Smith
csmith@lindquist.com
David A. Allgeyer
dallgeyer@lindquist.com

Duane H. Mathiowetz, (SBN 111931),
dmathiowetz@schiffhardin.com
SCHIFF HARDIN LLP

**ATTORNEYS FOR DEFENDANT TT TECHNOLOGIES, INC.**