UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRIC TOOLS, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>TT TECHNOLOGIES, INC, et al.,<br><br>    Defendants. | Case No. 12-cv-03490-JST<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND SETTING CASE MANAGEMENT CONFERENCE**<br><br>Re: ECF No. 99 |

Before the Court is Defendant TT Technologies, Inc.'s ("TT") motion for summary judgment of non-infringement. ECF No. 99. For the reasons set forth below, the Court will GRANT the motion.

## I.    BACKGROUND

Plaintiff and Counter-Defendant Tric Tools, Inc. ("TRIC") brought this action for patent infringement against Defendants and Counter-Claimant TT and Tracto-Tecknik GMBH & Co., KG on July 3, 2012. ECF No. 1. TRIC alleges that TT's Grundotugger machine infringes its patents for a pipe-bursting device: Patent Numbers 6,305,880 ("'880 patent"), 6,524,031 ("'031 patent"), and 6,793,442 ("'442"). All three patents relate to a device and method for trenchless replacement of underground pipe by splitting existing pipe and pulling cable through the existing pipe in order to perform the replacement. The '031 patent is a continuation of the '880, and the '442 is a continuation of the '031.

TRIC designed its device to be relatively lightweight, yet powerful, and to allow underground pipes to be replaced without the digging of trenches. Id.; U.S. Patent No. 6524031, col. 8:13-25. This invention was an improvement over prior methods of pipe replacement, which often employed components that could weigh two to five tons, and that were powered by "heavy duty equipment, cranes, trucks, and back-hoes, etc. They also need large excavations, such that

the support equipment can take up enough room so as to create traffic problems and even require street closures." '880 patent, col. 1:44–50. Prior art trench replacement technology was also very expensive, so its use was limited primarily to large contractors working on municipal or corporate supply and sewer lines of the six-inch size or larger. Id. 51–58. By contrast, the equipment of TRIC's invention is of "modular design and needs no bolting, or tools to assemble," fits in a smaller excavation hole, and is smaller and lighter. Id. 2:4–22.

TRIC filed its first amended complaint, the operative complaint here, on January 8, 2013. ECF No. 57.

### A. Patents-in Suit and Remaining Asserted Claims

TRIC's three patents are the subject of four claims at issue in this proceeding: Claims 19 and 20 of the '880 Patent, Claim 23 of the '031 Patent, and Claim 7 of the '442 Patent. On June 24, 2014 the Court issued a claim construction order, in which it construed ten terms from the patents-in-suit. ECF No. 97. Of particular import here, the Court construed the term "cable pulling device" to mean a "post-tensioning device for engaging and pulling a cable with a series of cyclic strokes." ECF No. 97 at 16-17.

### B. Jurisdiction

This Court has federal question jurisdiction over this action, as the action arises under the patent laws of the United States, 35 U.S.C. § 271 et seq. See 28 U.S.C. § 1331.

## II. LEGAL STANDARD

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable factfinder to find for the non-moving party, and "material" only if the fact may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-89 (1986). All reasonable inferences must be drawn in the light most favorable to the non-moving party. Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 922 (9th Cir. 2004). The Court applies the same summary judgment standards in patent cases that it applies in other cases. See Union Carbide Corp. v. Am. Can Co., 724 F.2d 1567,

1571 (Fed. Cir. 1984).

"A determination of patent infringement consists of two steps: (1) the court must first interpret the claim, and (2) it must then compare the properly construed claims to the allegedly infringing device." Playtex Prods., Inc. v. Procter & Gamble Co., 400 F.3d 901, 905-06 (Fed. Cir. 2005) (citation omitted).

"To support a summary judgment of noninfringement it must be shown that, on the correct claim construction, no reasonable jury could have found infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee." Netword, LLC v. Centraal Corp., 242 F.3d 1347, 1353 (Fed. Cir. 2001). To survive a motion for summary judgment of noninfringement, a patentee must set forth competent evidence that "features of the accused product would support a finding of infringement under the claim construction adopted by the court, with all reasonable inferences drawn in favor of the non-movant." Intellectual Science & Tech., Inc. v. Sony Elecs., Inc., 589 F.3d 1179, 1183 (Fed. Cir. 2009) (citations omitted). To literally infringe, an accused device must literally infringe each limitation of the patented device. Bai v. L & L Wings, 160 F.3d 1350, 1353-54 (Fed. Cir. 1998).

Under the doctrine of equivalents, "[s]ummary judgment of noninfringement . . . is appropriate if no reasonable jury could determine two elements to be equivalent." Goldenberg v. Cytogen, Inc., 373 F.3d 1158, 1164 (Fed. Cir. 2004) (citation and internal quotations omitted). To avoid a finding of infringement, an accused infringer need only show the absence of a single claim limitation, or its equivalent, from the accused device. KCJ Corp. v. Kinetic Concepts, Inc., 223 F.3d 1351, 1359 (Fed. Cir. 2000). The Court thus must compare the equivalence of each limitation in the claim to each element of the accused device, "not the entire patent to the entire product." Gemalto S.A. v. HTC Corp., 754 F.3d 1364, 1373 (Fed. Cir. 2014) (citation omitted).

### III.   DISCUSSION

#### A.   '031 Patent, Claim 23

##### 1.   Literal infringement

Because the Court has already construed the operative terms in Claim 23, the remaining question in the literal infringement analysis is how Claim 23, as construed, compares to the

accused device—here, the Grundotugger.

In its June 24, 2014 order, the Court construed "cable pulling device" to mean a post-tensioning device. ECF No. 97 at 14-17. Despite the general rule that a claim will not be limited to the embodiment specified in a patent, Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 906 (Fed. Cir. 2004) (citations omitted), the Court found that the language TRIC used in the specification indicated its intent to limit the patent's use of the term "cable pulling device" to a post-tensioning device. The existence of a post-tensioning device is therefore a limitation of the '031 Patent and must be present in the Grundotugger to support a finding of infringement. ECF No. 97 at 14-17.[1]

Post-tensioning devices are commonly used as a means to grip and pull rebar in concrete or bridge cable so as to place the rebar or cable under tension. ECF No. 97 at 15; see, e.g., ECF No. 105-2, Ex. A at 2 (depicting a Crowder brand post-tensioning device). As described in this Court's claim construction order, the post-tensioning device encompassed in the '031 Patent engages and pulls a cable with a series of cyclic strokes. ECF No. 97 at 17. It does so by feeding cable through a "nose" and into two collets that are aligned one in front of the other along two pistons, but physically separated from each other. See ECF No. 105-2, Ex. A at 2 (depicting TRIC's cable pulling device). The collets function as cable gripping devices, grasping and releasing the cable being pulled in a series of cyclic strokes. Id.; ECF No. 97 at 6-8. To power the cyclic strokes, the patented device employs the extending and retracting action of the pistons. ECF No. 105-2, Ex. A at 2.

Both the Grundotugger and post-tensioning devices are designed to pull a "mole"—a device that is tapered at the leading edge and wider at the rear and attaches to a cable pulled through pre-existing pipe. See generally ECF No. 107 at 3; ECF No. 99 at 17. As the mole passes through the pre-existing pipe, by virtue of its shape, the mole "bursts" the pipe. Id. Both the post-

---

[1] Much of TRIC's opposition to TT's motion for summary judgment is devoted to challenging the Court's construction of "cable pulling device," either directly or indirectly. See ECF No. 105 at 2-7. The Court will not revisit its construction of that term, nor will it grant TRIC leave to file a separate motion for clarification of the term. See ECF No. 105 at 4.

1    tensioning device described in the '031 Patent and the Grundotugger are designed to pull cable,

2    with a mole attached, through pre-existing pipe.  But the Grundotugger's mechanism for gripping

3    and pulling cable—its "rocker arm assembly"—differs from the post-tensioning device required

4    by the '031 Patent.

5           The Grundotugger uses a rocker-arm assembly, rather than a post-tensioning device, to

6    pull cable.  See generally ECF No. 105-3, Ex. B at 1.  The rocker-arm assembly is composed of a

7    semi-rectangular "rocker arm," that has rounded corners on one end and is round on the other end.

8    Id.  The rocker arm is grooved along its outside so as to use friction to catch cable being fed into

9    the Grundotugger machine.  Id.; ECF No. 99 at 5; ECF No. 106 at 8.  It uses a pair of different-

10   sized cylindrical pistons that operate at angles to each other to power its rocking motion, which

11   creates a series of pulling and releasing strokes that move the cable along its pipe-bursting path.

12   ECF No. 99 at 4-5; ECF No. 105-3, Ex. B at 1.  It also uses two gripping devices, one where the

13   cable feeds into the Grundotugger on the front end of the rocker arm, and one on the opposite side

14   of the rocker arm.  Id.

15          Given this evidence, and drawing all reasonable inferences in TRIC's favor, the Court

16   finds that no reasonable jury could find that the Grundotugger machine incorporates a post-

17   tensioning device, or that its rocker-arm assembly is a post-tensioning device.  Even TRIC

18   concedes that TT's machine lacks a post-tensioning device.  ECF No. 105 at 8 ("TT's machine

19   does not use a post-tensioning device").[2]  Accordingly, under the Court's construction of "cable

20   pulling device," the Court finds that TT's machine lacks an element of the patented device.  The

21   Grundotugger does not literally infringe TRIC's '031 Patent.

22          TRIC argues that the Court's prior claim construction order was ambiguous:  that the Court

23   construed "cable pulling device" as necessarily constituting a post-tensioning device, but that the

24   patented device actually incorporates a *modified* post-tensioning device that, by virtue of its

25   modification, does not function as a post-tensioning device.  ECF No. 105 at 3-4; see ECF No.

26   105-2, Ex. A at 1-2 (comparing an off-the-shelf post-tensioning device with the modified post-

---

[2] At the hearing on this motion, TRIC's counsel also stated, "I don't think their device has a post-tensioning device as such."

1  tensioning device depicted in the '031 Patent). TRIC also argues that the Court's construction of
2  "cable pulling device" is ambiguous because it could mean many different types of post-
3  tensioning devices that are not within the scope of the '031 Patent. Id. at 2-4, 5-7.
4        But any ambiguity TRIC cites does not change the fact that the '031 Patent expressly
5  requires a post-tensioning device *of some sort*, whether modified, of a specific brand, or otherwise.
6  And TRIC agrees that a post-tensioning device is at least a good starting point for construing the
7  term "cable pulling device." ECF No. 105 at 5. Thus, even if a post-tensioning device must be
8  modified to meet TRIC's machine's requirements, a post-tensioning device is an essential element
9  of the '031 Patent. If anything, TRIC's ambiguity argument asks the Court to *narrow* its
10 construction of "cable pulling device" to some particular form of post-tensioning device, moving
11 the accused device even farther outside the ambit of the '031 Patent.[3] Similarly, TRIC has not
12 explained how the Court's construction of "cable pulling device" to mean "post-tensioning
13 device" renders the '031 Patent invalid. See ECF No. 105 at 5-7.
14       TRIC has not carried its burden to show that the Grundotugger contains a post-tensioning
15 device, a limitation of the '031 Patent.

16       **2.   Doctrine of equivalents**

17       Under the doctrine of equivalents, a court may find non-literal infringement where a
18 patented device and an accused device are substantially equivalent. To determine whether an
19 accused device, though not literally infringing, is nonetheless equivalent to the patentee's device, a
20 court may apply either of two tests: the function/way/result test, or the insubstantial differences
21 test. Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 39-40 (1997). Both
22 tests require the Court to evaluate the equivalence of each limitation in the claim to each element
23 of the accused device. Gemalto, 754 F.3d 1364, 1373 (Fed. Cir. 2014) (citation omitted).

---

[3] TRIC also argues that it now no longer uses a post-tensioning device for pipe-bursting, ECF No. 105 at 7, but that fact is not helpful to its position. The question is not whether TRIC practices the patent, but whether TT does. See Zenith Labs., Inc. v. Bristol-Myers Squibb Co., 19 F.3d 1418, 1423 (Fed. Cir. 1994) ("[I]t is error for a court to compare in its infringement analysis the accused product or process with the patentee's commercial embodiment or other version of the product or process; the only proper comparison is with the claims of the patent.").

6

Under the function/way/result test, courts evaluate whether, "for each claim limitation . . . the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product." Brilliant Instruments, Inc. v. GuideTech, LLC, 707 F.3d 1342, 1347 (Fed. Cir. 2013).

Here, while TT contends that the functions, ways, and results of the Grundotugger and the patented device differ, it offers substantive argument only as to how the two devices differ in way. See ECF No. 106 at 13 ("Even if TRIC's bald assertion of the purportedly equivalent function and result of [the patented and accused devices] had any merit—which it does not—no reasonably jury could conclude that the invention and the machine operate in the same way."). For purposes of this motion, the Court assumes that the function and result of both the Grundotugger's rocker-arm assembly and TRIC's post-tensioning device are the same: they both function to pull a cable with a mole attached in order to burst pipe, and both have that same result. The Court finds, however, that the *way* in which the two devices achieve these results differs.

The Grundotugger's rocker-arm assembly pulls cable by using a rocking motion, two smooth, clamp-like grippers, and a groove along the rim of the rocker-arm to aid in gripping the cable entering the machine. Conversely, TRIC's post-tensioning device uses collets as cable gripping devices and the extension and retraction of two pistons to achieve the same result. In addition, while both machines use pistons, the ones in TRIC's device are situated parallel to each other, and create force in a front-to-back orientation by their extension and retraction, while the Grundotugger's rocker-arm assembly employs two hydraulic pistons situated at angles to each other and attached at opposing ends of the rocker arm in order to effectuate the rocker-arm's rocking motion. These are decidedly different ways to achieve the same result. Indeed, although TT previously used a post-tensioning device, it abandoned its use in the Grundotugger, because it found that post-tensioning devices "really abused the small section of the cable they were able to grip on each pulling stroke," resulting in "the potential for cable slippage and having frayed and structurally unsound cable." ECF No. 108 at 3; see also id. at 2-5; ECF No. 107 at 4.

The insubstantial differences test is another way of asking whether two devices are equivalent—i.e., whether they are only *insubstantially different*. The U.S. Supreme Court has

7

1    noted the general consensus among courts that, as compared to the function/way/result test, the
2    insubstantial differences test offers "little additional guidance as to what might render any given
3    difference 'insubstantial.'" Warner-Jenkinson, 520 U.S. at 39-40. The Court agrees that in this
4    instance, the insubstantial differences test provides little guidance beyond that provided by the
5    function/way/result test. Thus, for the same reasons that the rocker-arm assembly does not satisfy
6    the function/way/result test and therefore is not equivalent to TRIC's post-tensioning device, the
7    Court finds that under the insubstantial differences test, no reasonable jury could find the elements
8    of the two devices equivalent.

9    TRIC only summarily addresses the equivalence of the Grundotugger's rocker-arm assembly as compared to TRIC's post-tensioning device. See ECF No. 105 at 13 ("TT's machines employ a short hydraulically powered stroke on the cable to pull it through the pipe, cycling between a pulling stroke and a recovery stroke, using one gripper to engage the cable on the pulling stroke and another gripper to hold the cable in place during the recovery stroke. This is exactly the same function, way and result as that of the cable pulling device as claimed in the TRIC patents."). This argument is unconvincing and fails to meet the standard for defeating summary judgment under the doctrine of equivalents. Gemalto, 754 F.3d at 1373 (explaining that a patentee must, to defeat a motion for summary judgment of noninfringement, "provide particularized testimony and linking argument as to the insubstantiality of the differences between the claimed invention and the accused device."). That the two devices are "functionally the same," as TRIC asserts, does not remedy this deficiency. Id. at 14.

Lacking an element of the patented device both literally and under the doctrine of equivalents, the Court finds that TT's Grundotugger does not infringe the '031 Patent.[4]

### B.     '880 Patent, Claims 19 and 20

---

[4] TRIC makes several other arguments regarding alleged disputes of material fact that would preclude summary judgment. ECF No. 105 at 1-2. The first disputed "fact" TRIC cites is that the Court's construction of "cable pulling device" to mean "post-tensioning device" is ambiguous. Id. at 1. This is an issue of law, not one of fact. Markman v. Westview Instruments, Inc., 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc). The Court need not reach the other alleged disputes of fact, because the absence of a post-tensioning device in TT's machine is dispositive.

The '031 patent is a continuation of the '880 patent. Both patents use the same specification with the same language that led the Court to construe "cable pulling device" to mean a post-tensioning device, so the Court will apply the construction of "cable pulling device" it adopted for the '031 Patent to Claims 19 and 20 of the '880 Patent. See Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1334 (Fed. Cir. 2003) (explaining the general rule that, "unless otherwise compelled, . . . the same claim term in the same patent or related patents carries the same construed meaning."); see also Morvil Tech., LLC v. Medtronic Ablation Frontiers, LLC, No. 10-CV-2088 BEN (BGS), 2012 WL 3277272, at *2 (S.D. Cal. Aug. 10, 2012) ("Because the patents at issue are all from the same family and the specifications are nearly identical, Plaintiff contends that the terms should be construed consistently across the patents. Defendants do not object. Accordingly, the terms will be construed consistently across the patents.").

Both Claims 19 and 20 therefore incorporate as a limitation a post-tensioning device. As discussed more fully above with respect to Claim 23 of the '031 Patent, TT's Grundotugger machine contains no post-tensioning device. TT's machine does not literally infringe Claims 19 and 20 of the '880 Patent. Likewise, and for the reasons set forth above, TT's Grundotugger does not infringe Claims 19 and 20 under the doctrine of equivalents.

### C.     '442 Patent, Claim 7

The '442 Patent is a continuation of the '031 Patent. Both patents use the same specification and the same language in the specification that the Court relied on in its claim construction order to determine that, with respect to the '031 Patent, "cable pulling device" means "post-tensioning device." See '442 patent, cols. 7:42-48, 7:60-66. TRIC has provided no argument as to why the Court should construe the term "cable pulling device" differently for the purposes of the '442 Patent and Claim 7, as compared to the '031 Patent and Claim 23. Thus, as explained more fully in Section III.B., the Court will apply the same construction of "cable pulling device" to the '442 Patent, thereby incorporating a post-tensioning device as a limitation in the '442 Patent and Claim 7.

The Court finds that TT's Grundotugger does not literally infringe Claim 7 because the Grundotugger does not include a post-tensioning device. And for the reasons set forth above, the

1  Grundotugger does not infringe Claim 7 under the doctrine of equivalents.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS TT's motion for summary judgment of non-infringement of Claim 23 of the '031 Patent, Claims 19 and 20 of the '880 Patent, and Claim 7 of the '442 Patent.[5]

The Court further sets a case management conference on December 3, 2014.  The parties shall file a joint case management statement not later than November 19, 2014.

**IT IS SO ORDERED.**

Dated:  November 4, 2014



_____
JON S. TIGAR
United States District Judge

---

[5] TT argues that it is entitled to summary judgment of noninfringement on several other bases. See ECF No. 99 at 1-2.  Because the Court grants summary judgment based on the Court's construction of "cable pulling device," the Court declines to address TT's other arguments.

10